# IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE

## IN AND FOR SUSSEX COUNTY

LAMB'S CUSTOM PAINTING &          )
RESTORATION, INC.,                )
                                  )
            Plaintiff,            )        C.A. No. CPU6-23-000985
                                  )
       v.                         )
                                  )
DOUGLAS A. BROWN and ELIZABETH    )
A. BROWN, husband and wife,       )
                                  )
            Defendants.           )
                                  )


Submitted: July 14, 2025
Decided: October 21, 2025


## DECISION AFTER TRIAL


Blake W. Carey, Esquire, 323 Rehoboth Avenue, Suite D, Rehoboth Beach, DE 19971. *Attorney for Plaintiff.*

Peter K. Shaeffer, Jr., Esquire, 1073 S. Governor's Avenue, Dover, DE 19904. *Attorney for Defendants.*


**MIMS, J.**

Lamb's Custom Painting & Restoration, Inc. ("Plaintiff") brought this action against Douglas A. Brown ("Brown") and Elizabeth A. Brown ("Mrs. Brown) (collectively "Defendants"), through its legal counsel for a breach of contract and, in the alternative, a claim of quantum meruit seeking damages of $26,144.39, pre- and post-judgment interest, and such other relief deemed fair and equitable by this Court. This honorable Court held trial on July 14, 2025, and reserved its decision. The Court finds by preponderance of the evidence Plaintiff failed to meet its burden as it failed to prove a contract existed between the parties, and it failed to justify its demand for compensation under quantum meruit from Defendants.

## PROCEDURAL HISTORY

On September 29, 2023, Plaintiff filed a breach of contract claim and, in the alternative, a quantum meruit claim against Defendants.[1] In its Complaint, Plaintiff alleges it provided the materials and performed the painting and soft washing for two of Defendants' properties totaling $26,144.39.[2] Plaintiff alleges Defendants previously owned both 313 East Savannah Road, Lewes, Delaware 19958 (the "Lewes Property"), and 28881 Harmons Hill Road, Millsboro, Delaware 19966 (the "Millsboro Property").[3] It further alleges painting the Lewes Property spanned 494 hours; however it provides no set time spent soft washing the Millsboro Property.[4] On or before October 2022, Plaintiff completed all work requested by Defendants. Plaintiff requested payment through electrical services from Brown who failed to perform the work.[5] Consequently, Plaintiff's

---

[1] Compl., ¶ 1, Sept. 29, 2023.
[2] Compl., *supra* note 1, at 3; Answer, ¶ 3, Apr. 16, 2024.
[3] Compl., *supra* note 1, at 1-2; Answer, *supra* note 2, at 3.
[4] Compl., *supra* note 1, at 3.
[5] *Id.*

prayer for relief under the breach of contract claim is $26,144.39 in damages for Defendants' alleged failure to perform.[6]

In the alternative, Plaintiff alleges Defendant received a substantial benefit thereby being significantly enriched by Plaintiff's work performed on both of Defendants' properties. Plaintiff's prayer for relief is either the $26,144.39 in damages or specific performance in the form of equivalent electrical services from Brown.[7]

On December 13, 2023, Defendants filed a Motion to Dismiss pursuant to 10 *Del. C.* § 8106 (a), action asserting there was a three-year statute of limitations on this action.[8] Defendants maintain Plaintiff is barred from pursuing this action because Plaintiff filed suit three years and eight months subsequent to the date goods and services were provided to Defendants.[9] Defendants maintain Plaintiff's performance completion occurred prior to January 9, 2020 based on Plaintiff's Facebook post.[10] Further, Defendants maintain Plaintiff "generated an invoice in support of its claim two years and nine months subsequent to the date goods and services were provided to Defendants."[11]

---

[6] *Id.* at 4.

[7] *Id.*

[8] Mot. to Dismiss ¶ 1, Dec. 13, 2023; *see also* 10 DEL. C. § 8106 ("(a) No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.").

[9] Mot. to Dismiss, *supra* note 2, at 3.

[10] *Id.*; *see* Attachment B, at *1 (Del. Com. Pl. Dec. 13, 2023).

[11] Mot. to Dismiss, *supra* note 2, at 3; Attachment A, at *1, Dec. 13, 2023.

3

Plaintiff responded to this Motion on February 26, 2024, arguing a breach of contract action accrues when a breach occurs.[12] Plaintiff maintains it requested electrical services from Defendants in October 2022 and Defendants refused to perform.[13] Consequently, Plaintiff asserts its claim is not barred by the statute of limitations under 10 *Del. C.* § 8106 (a) because less than one year passed between the alleged breach in October 2022 and the filing of its Complaint on September 29, 2023.[14] Further, Plaintiff maintains the oral contract between Plaintiff and Defendants could be considered the exception to 10 *Del. C.* § 8106 (a), a mutual running account under 10 *Del. C.* § 8108.[15] Plaintiff argues its account remained open and current until Defendants failed and refused to provide electrical services to Plaintiff to reduce their side of the account from the work Plaintiff performed on the two properties.[16]

On April 2, 2024, this Court denied the Motion to Dismiss and found the statute of limitations began to run when Defendant allegedly refused to pay or perform services to Plaintiff in October 2022.[17] On April 16, 2024, Defendants filed an Answer denying all allegations to both claims.[18] In their Answer, Defendants assert Brown retired from electrical work on August 31, 2023.[19] However, Defendants admit Plaintiff "provided painting services to the Lewes Property prior to January 9, 2020," but denied it sought to have the exterior of their previous Millsboro

---

[12] Resp. to Mot. to Dismiss, ¶¶ 2-3, Feb. 26, 2024.
[13] *Id.*
[14] Resp. to Mot. to Dismiss, *supra* note 6, at 3-4.
[15] 10 *Del. C.* § 8108 ("In the case of a mutual and running account between parties, the limitation, specified in § 8106 of this title, shall not begin to run while such account continues open and current.").
[16] Resp. to Mot. Dismiss, *supra* note 6, at 4-5.
[17] Order, ¶¶ 3-4, Apr. 2, 2024; see *Guerrieri v. Cajan Cove Condo. Council*, 2007 WL 1520039, at *6 (Del. Super. Apr. 25, 2007) ("In cases of continuous contract and continuing breach, the statue begins to run only when full damages can be ascertained and recovered.").
[18] Answer, *supra* note 2, at 2-7.
[19] *Id.* at 3.

Property soft-washed.[20] Defendants also assert "Douglas Brown and Richard and Dawn Lamb exchanged various goods and services as friends for several years, such as reciprocal electrical and painting services, as well as climate-controlled storage for Richard Lamb's (the owner of Lamb's Custom Painting) motorcycle and use by Richard and his wife Dawn Lamb of Defendants' Florida property for vacation; no cash was exchanged by either party."[21]

Additionally, Defendants assert several affirmative defenses including: the Complaint fails to state a claim upon which relief can be granted; Plaintiff has waived any right to pursue the claims listed in the Complaint; Plaintiff is barred from relief under the doctrine of laches and/or applicable statutes of limitations; Plaintiff is barred from recovery because it failed to give notice of an alleged breach; Plaintiff has failed to join all necessary parties, speifically Richard and Dawn Lamb, 34850 Picnic Basket Ct., Rehoboth Beach, DE 19971; Plaintiff lacks standing to pursue the claims and relief sought in the Complaint; Plaintiff is barred from recovery as a result of its own breach of the parties' agreement(s); Plaintiff is barred from recovery under the theory of accord and satisfaction; answering Defendants hereby reserve the right to assert additional defenses, affirmative or otherwise, as may be revealed by discovery or investigation.[22]

From May 30, 2024, to August 13, 2024, the parties attempted to resolve the matter through mediation.[23] However, by August 13, 2024, the parties notified this honorable Court they failed to reach an agreement.[24] The Court set October 22, 2024, for a scheduling conference.[25] Under the scheduling order, the Court set a pretrial conference date for April 15, 2025.[26] This Court held a

---

[20] *Id.*
[21] *Id.* at 4.
[22] Answer, *supra* note 2, at 8-9.
[23] See Docket Items.
[24] *Id.*
[25] *Id.*
[26] Scheduling Order, ¶¶ 1, Oct. 22, 2024.

scheduled trial for July 14, 2025 with a second pretrial conference scheduled for July 7, 2025, in advance of the trial date.

The Court heard testimony from the following witnesses for the Plaintiff: Richard Lamb; Dawn Lamb, Mr. Lamb's wife; Douglas Brown; Elizabeth Brown; and Kent Schoch, as an expert witness for Plaintiff.[27] Plaintiff admitted 13 documents into evidence without objection.[28] The Court heard testimony from the following witnesses for the Defendants: Douglas Brown; Elizabeth Brown; Richard Lamb; and Dawn Lamb. Defendant admitted nine documents into evidence without objection.[29]

## FACTS

After reviewing each party's proffered evidence and hearing testimony at trial, the Court finds the relevant facts to be as follows:

Plaintiff, a Delaware corporation, is owned and operated by Richard Lamb ("Lamb") a painting contractor for 25 years.[30] Lamb lives at 34850 Picnic Basket Court, Rehoboth Beach, DE 19971.[31] Plaintiff's operation consists primarily of interior and exterior residential painting with a minor amount of commercial painting as well as exterior soft-wash services.[32] Plaintiff testified he primarily works for clients in Sussex County and submits proposals to prospective clients with an hourly rate of $50 per hour for each employee.[33] However, Plaintiff testified that he charges only

---

[27] The Court gave little weight to the testimony of this witness as he had no personal knowledge of this matter and he charged at an hourly rate for electrical services, in contrast to Brown who charged at a flat rate for services.
[28] Pl. Ex. A – M
[29] Def. Ex. A – I.
[30] Compl., *supra* note 1, at 1-2.
[31] *Id.*
[32] *Id.*
[33] *See* Pl. Ex. B., July 14, 2025.

time and materials at an hourly rate for friends. Plaintiff bills only for the materials based on what is paid with no mark-up.[34]

On or about 2012, Lamb testified he met Brown on a contracting job at Henlopen Acres where Lamb was painting, and Brown was conducting electric work. Brown served as a Master electrician licensed in Delaware for 30 years as the owner and operator of Brown Electric Services, Inc. until he let his license lapse September 1, 2023.[35] Richard and Dawn Lamb ("The Lambs") and Douglas and Elizabeth Brown ("Defendants") became friends and socialized often over the years including vacations, dinners, birthday parties, and motorcycle rides.[36] Lamb and Brown testified they engaged in a bartering system where they would work on projects and jobs for each other with no financial exchange. Neither party discussed time or materials for any project they engaged in both personally and professionally. Further, Brown kept scaffolding, ladders, and materials in his garage for Lamb. Brown also housed a motorcycle for Lamb in his garage for no financial compensation. Brown testified he engaged with other contractors on a similar barter-exchange basis for no financial compensation. As of the date of this suit, neither party provided a written contract to these exchanges in services.[37]

Defendants previously owned both the Lewes Property, sold on August 23, 2022, as well as the Millsboro Property, sold on August 25, 2023.[38] On or about 2014, Plaintiff painted the exterior of Defendants' Lewes Property using three different colors.[39] Plaintiff utilized three of its

---

[34] *Id.*
[35] Answer, *supra* note 2, at 3.
[36] Answer, *supra* note 2, at 4; Pl. Ex. M, July 14, 2025; Def. Ex. I, July 14, 2025; *see* Pl. Ex. K, July 14, 2025; *see* Pl. Ex. L, July 14, 2025.
[37] *See* Pl. Ex. A – M; *see* Def. Ex. A – I.
[38] Compl., *supra* note 1, at 1-2; Answer, *supra* note 2, at 3.
[39] Compl. *supra* note 1, at 2-3; Pl. Ex. A, July 14, 2025 (the exhibit proffers a photo of the newly painted Lewes Property); Pl. Ex. D, July 14, 2025.

7

employees to complete the job and kept receipts of the materials paid and used for the job.[40] On or about 2019, Plaintiff returned to the Lewes Property to paint 90 percent of the interior, as well as additional exterior painting including: scalloped detail with three colors, an addition to the home, and two roofs.[41] Brown admitted he knew the painting was not free; however, he understood there would be a continued bartering of services.[42]

During this same time, Brown provided electric work for Plaintiff and some of Plaintiff's customers and friends where there was damage during painting or other favors.[43] Brown installed a ceiling fan and reinstalled siding and insulation; completed a rough-in above and below kitchen lighting; installed new kitchen, dining, and stairwell fixtures; installed a primary bath vanity light fixture and a primary bedroom ceiling fan; installed second floor bathroom vanity lighting fixtures and a ceiling fan; installed dimmers for rough-in protected receptacle outlet in the garage; and removed existing 100 amp 20 circuit electrical service in the Lambs' E. Estate Drive residence in Rehoboth in preparation for the sale of the property.[44] While Plaintiff admits he received barter services from Defendant after he completed the work on Defendants' Lewes property, Plaintiff feels it was not equal in value.

Neither Lamb nor Brown ever discussed financial compensation or submitted invoices to each other for the services they provided from 2014 through 2022. Moreover, Mrs. Brown served as a friend to the Lambs and never engaged in her husband's business or entered into any agreement or contract with Plaintiff. Brown admitted he discussed in 2014, during the painting of his Lewes Property, the possibility of installing all the electrical work for Lamb's proposed shop/garage and

---

[40] Pl. Ex. B, July 14, 2025; Pl. Ex. C, July 14, 2025.
[41] Pl. Ex. E, July 14, 2025; Pl. Ex. F, July 14, 2025.
[42] Compl., *supra* note 1, at 2; Answer, *supra* note 2, at 3.
[43] Def. Ex. E, July 14, 2025; Def. Ex. F, July 14, 2025.
[44] Def. Ex. E, July 14, 2025; Def. Ex. F, July 14, 2025.

the new Lamb residence that would be attached, however there was no definitive agreement. In fact, Lamb completed construction on the shop on or about October 2022; as of this date, the attached residence has yet to be built. On or about October 2022, Lamb requested Brown complete the electrical work for the shop/garage. Brown advised he could pull the permit and conduct the final inspection; however, he could not complete the labor due to his planned move to Florida.

Defendants moved to Naples, Florida on or about October 2022 upon their retirement and sale of their two homes in Delaware.[45] Defendants sold the Lewes Property on or about August 2022 and the Millsboro Property on or about September 2023.[46] Once Mr. Brown expressed he could not complete the work on the shop/garage the relationship was irretrievably broken.[47] Plaintiff itemized the cost of the paint work from 2014 and 2019 it had conducted in a statement dated October 20, 2022.[48] As expressed in both its Complaint and the statement, Plaintiff's prayer for relief under the breach of contract claim is $26,144.39 in damages for Defendants' alleged failure to perform.[49] It is unclear whether Defendants received this as it was mailed to the Millsboro Property and Defendants had moved to Florida. Plaintiff retained a lawyer who sent a demand letter dated February 9, 2023, to Defendants at their Millsboro property and their home in Naples, FL.[50] Defendants admitted they received this communication.[51]

---

[45] Answer, *supra* note 2, at 4.
[46] Compl., *supra* note 1, at 1-2; Answer, *supra* note 2, at 3.
[47] Compl., *supra* note 1, at 3; Answer, *supra* note 2, at 3.
[48] Compl., *supra* note 1, at 3; Pl. Ex. C, July 14, 2025; Pl. Ex. F, July 14, 2025; Pl. Ex. H, July 14, 2025.
[49] Compl., *supra* note 1, at 4.
[50] Pl. Ex. J, July 14, 2025.
[51] Def. Ex. C, July 14, 2025.

## STANDARD OF REVIEW

The Court is the trier of facts and has the sole discretion to determine the credibility of the witnesses and any evidence provided.[52] If evidence introduced at trial conflicts, the Court must reconcile these conflicts to find congruity.[53] However, if the Court is unable to find such congruity, the Court must determine which portions of the testimony deserve more weight.[54] Any portion of the testimony that the Court finds unsuitable for consideration shall be disregarded.[55] Furthermore, the Court considers "the witnesses' demeanor, or the fairness and descriptiveness of their testimony, their ability to personally witness or know the facts about which they testify, and any biases or interests they may have concerning the nature of the case."[56]

Moreover, under Delaware law, a plaintiff in a civil matter shoulders the burden of proving their claims by preponderance of the evidence.[57] The preponderance of the evidence standard "means proof that something is more likely than not."[58] Thus, the law demands that Plaintiff and Defendants meet this standard to prove their claims and defenses.

## DISCUSSION

### I. <u>Plaintiff failed to prove it formed a contract with Defendants.</u>

Under a breach of contract claim, Plaintiff must prove by preponderance of the evidence that (1) the parties formed a contract, (2) what the terms of that contract were, (3) Defendant breached the contract, and (4) Plaintiff suffered monetary damages because of Defendant's

---

[52] *Leep v. Weline*, 2018 WL 301089 at *5 (Del. Com. Pl. Jan. 3, 2018).
[53] *Id.*
[54] *Leep*, 2018 WL 301089 at *5.
[55] *Id.*
[56] *Leep*, 2018 WL 301089 at *5.
[57] *JER Judson GP XXI LLC v. DLE Investors, LP*, 275 A.3d 755, 782 (Del. Ch. 2022).
[58] *Id.*

breach.[59] As to the first element, a contract is a legally enforceable agreement typically formed by mutual assent and consideration provided there are no viable defenses.[60]

In the instant case, Plaintiff fails to prove the formation of a contract between the parties. Plaintiff proffered no written contract, no written messages referencing offer, acceptance, and consideration, and no evidence of an oral agreement by which Plaintiff would paint and soft wash Defendants' properties in exchange for Brown's electrical services.

Plaintiff solely proffered evidence of the parties assisting each other with jobs and projects pursuant to their personal friendship. Indeed, the Lamb's and Brown's friendship is evidenced by Defendants' housing Plaintiff's motorcycle and painting materials for several years,[61] Plaintiff's company painting and soft washing the Defendants' homes, and Brown providing electrical work on the Lamb's home.[62] Likewise, each party picked up the tab when they went out to restaurants together, and Mr. and Mrs. Lamb vacationed at Defendants' Florida home.[63]

Furthermore, no contract formed between the parties because both Lamb and Brown testified that they engaged in a bartering system where each party would work on projects and jobs for each other with no financial exchange. Plaintiff and Brown discussed the painting of Defendants' home in exchange for electrical services on Plaintiff's garage and residence in 2014, however Plaintiff did not construct the garage until 2022. The Court finds there can be no meeting of the mind with such a large time gap and a prospective project, with no writing to that effect. Neither party discussed time or materials for any project they engaged in both personally and professionally. Thus, the exchanges that occurred between the parties for more than a decade were

---

[59] *Freeman v. Scott*, 2017 WL 2633487 at *4 (Del. Com. Pl. Jun 19, 2017).
[60] *Osborn ex. Rel. Osborn v. Kemp*, 991 A.2d 1153, 1158-59 (Del. 2010).
[61] Pl. Ex. M, July 14, 2025.
[62] Def. Ex. I, July 14, 2025; *See* Pl. Ex. K, July 14, 2025; *see* Pl. Ex. L, July 14, 2025.
[63] Answer, *supra* note 12, at 4.

predicated by friendship not a contract. In addition, Plaintiff fails to show any contract formed with Mrs. Brown, who did not work with her husband or know of his professional finances. Rather, Plaintiff proffers solely that mere co-ownership of the Lewes and Millsboro properties makes her liable under a breach of contract. The Court finds no such contract was formed.

Consequently, as Plaintiff failed to prove the first step in contractual analysis, this Court shall not assess the remaining elements. In sum, this Court finds Plaintiff failed to prove Defendants breached a contract, because Plaintiff failed to prove the formation of a contract between the parties.

II. **Plaintiff failed show it was impoverished, and Defendants were not justified in not compensating Plaintiff.**

Under Delaware law, a court finds quantum meruit—unjust enrichment—when (1) a party is enriched, (2) by another party that is impoverished, (3) there is a direct relation between the enrichment and the impoverishment, (4) the enriched party lacks justification for not compensating the impoverished party, and (5) there is an absence of a remedy provided by law.[64]

In the instant case, Plaintiff fails to prove the second, third, fourth, and fifth elements of unjust enrichment. Regarding the first element, Plaintiff clearly established Defendants were enriched when it painted Defendants' Lewes Property in 2014 and later in 2019.[65]

However, Plaintiff fails to prove elements two, three, and four. Under element two, Plaintiff admits to Brown performing some electrical work, though it may not have been equal in value to the work Plaintiff performed on Defendants' properties. This work includes installing a ceiling fan and reinstalling siding and insulation; completing a rough-in above and below kitchen lighting;

---

[64] *PR Acquisitions, LLC v. Midland Funding LLC*, 2018 WL 2041521 at *14 (Del. Ch. Apr. 30, 2018); *Frederick Hsu Living Trust v. ODN Holding Corp.*, 2017 WL 1437308 at *42 (Del. Ch. Apr. 14, 2017).
[65] Pl. Ex. A, July 14, 2025.

installing new kitchen, dining and stairwell fixtures; installing a master bath vanity light fixture and master bedroom ceiling fan; installing second floor bathroom vanity lighting fixtures and ceiling fan; installing dimmers for rough-in protected receptacle outlet in garage; and removing existing 100 amp 20 circuit electrical service in the Lambs' E. Estate Drive residence in Rehoboth in preparation for the sale of the property.[66] Consequently, Plaintiff cannot prove it was impoverished after painting the Defendants' Lewes Property and soft washing the Millsboro Property because it admitted to receiving electrical compensation by Brown on the Lamb's home. As to element three, Plaintiff failed to prove it was impoverished; therefore, no direct relationship exists between an enrichment and an impoverishment.

Regarding element four, Defendants are justified in not compensating Plaintiff because the relationship between the parties was predicated on friendship and more than a decade of exchange of services, i.e. bartering. Both parties' exchange services without financial compensation is illustrated by the extensive electrical work Brown performed on the Lamb's home, the Lamb's vacationing at Defendants' Florida home, the Lamb's soft washing Defendants' Millsboro Property, each couple treating the other to dinner, Defendants' housing Lamb's motorcycle and paint materials in their climate-controlled garage, and Lamb's company painting Defendants' Lewes Property. Thus, the Court finds that Defendants are justified in not financially compensating the Plaintiff because of the parties' history exchanging services without financial compensation. Plaintiff never submitted an invoice to Defendants for the painting of the Lewes property either in 2014 or 2019.

---

[66] Def. Ex. E, July 14, 2025; Def. Ex. F, July 14, 2025.

Moreover, Plaintiff requested services from Brown in 2022, which was eight years after Plaintiff's initial painting of the Lewes Property.[67] Defendants are therein justified for not compensating Plaintiff because Plaintiff asked for electrical services nearly a decade after the Lewes Property was painted. Furthermore, Defendants clearly have justification for not compensating Plaintiff after the Lewes Property painting in 2014 and 2019 because the electrical services Plaintiff requested in 2022 and again in 2023, were for a home and shop of which Plaintiff proffered no concrete plans for the Lamb's building a garage and attached residence in 2014 through 2019.[68] Though Brown admitted to discussing the possibility of the conducting electrical services for the garage and home being built by Plaintiff, no evidence proffered demonstrates the buildings were set to be constructed at that time. Consequently, Plaintiff failed to prove Defendants' lack of justification for not compensating Plaintiff.

As Plaintiff failed to prove elements two through four, it also cannot meet element five, an absence of a remedy provided by law. This Court can apply no remedy because Plaintiff failed to prove an unjust enrichment to Defendants occurred. Thus, this Court finds Plaintiff cannot meet all elements required to order quantum meruit damages.

---

[67] Pl. Ex. I, July 14, 2025; Def. Ex. C, July 14, 2025.
[68] Pl. Ex. J, July 14, 2025; Def. Ex. D, July 14, 2025.

## CONCLUSION

For the reasons set forth in this Opinion, **IT IS SO ORDERED** this 21st day of October 2025 the Court finds that Plaintiff did not meet its burden by a preponderance of the evidence that the Defendants are liable for breach of contract or, in the alternative, for quantum meruit damages. This honorable Court enters judgment in favor of Defendants.

_____
The Honorable Rae M. Mims
Judge


Cc:    Shelly Swafford, Judicial Case Manager Supervisor